IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

FRAN HOWELL,

        Plaintiff,

v.                                                               No. CIV 08-937 BB/WDS

NEW MEXICO DEPARTMENT OF AGING
& LONG TERM SERVICES, ADULT
PROTECTIVE SERVICES DIVISION,

        Defendant.


### MEMORANDUM OPINION
### SUPPORTING SUMMARY JUDGMENT


        THIS MATTER is before the Court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Having reviewed all submissions of the parties, the Court is convinced Plaintiff has failed to adduce sufficient evidence to require a trial.

### *Standard of Review*

        Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the

nonmoving party." *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts or other exhibits to support the claim. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). While the evidence need not be in a form that is admissible at trial, the content or substance of the evidence must be substantial and sufficiently reliable to be admissible. *Pastran v. K-mart Corp.*, 210 F.3d 1204 n. 1 (10th Cir. 2000).

While Plaintiff's status as a pro-se litigant requires the Court consider her pleadings under a liberal standard, it does not allow the Court to construct legal theories or create facts for Plaintiff, *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005). The nonmovant's, here Plaintiff's, burden is more than a simple showing of "some metaphysical doubt as to the material facts." *Matsushito Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999). Instead, the nonmoving party must present

facts such that a reasonable jury could find in its favor. *Id.* Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is non-specific or otherwise non-responsive, vague, conclusory, or self-serving." *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007). The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

*Facts*

Viewing the evidence in the light most favorable to the non-moving party, the facts show mutual incompatibility between Plaintiff and one or more of her supervisors but provide insufficient legal basis for any claim of prohibited discrimination based on federal law.

Prior to July 2005, Plaintiff was employed by the New Mexico Department of Children, Youth and Families in Carlsbad, New Mexico. She was supervised by Matthew Thompson. She had a long simmering dispute with Thompson over Plaintiff's "communication, interpersonal skills, documentation, and work performance." *Id.* Plaintiff was found to have work deficiencies and required to enter into a corrective action plan in January 2005. (Ex. 3(6b)).*[1]* In June of 2005, Plaintiff sought a transfer to the New Mexico Department of Aging and Long Term Services ("ALTS") in Tucumcari, New Mexico.

---

[1] Although Plaintiff's exhibits are variously numbered, the Court will refer to them as Exhibits 1, 2 and 3 and within Exhibits 2 and 3 the internal exhibit numbers will be in brackets. Ex. 2(2A), 3(32).

Following a reorganization of the Department, Thompson became a regional manager and again assumed second tier supervisory responsibility over Plaintiff in January 2006. Her immediate supervisor was Karen Allen, located in Clovis. Plaintiff received an Employee Development Appraisal ("EDA") from her supervisor, Matthew Thompson, in April 2006. Because of Plaintiff's tardiness and absenteeism,[2] the EDA set forth benchmarks for Plaintiff to complete her assignments. In May 2006, Plaintiff had still not completed the overdue work and was rated "unacceptable" on her employment evaluation.

Shortly thereafter, Thompson heard that Plaintiff had been telling her co-workers that she wanted to kill him. In June 2006, Plaintiff was placed on administrative leave while an independent investigation into these claims was made by the Deputy Secretary and General Counsel for ALTS. In this investigation, several employees reported that Plaintiff made detailed comments that she wished to murder her supervisor, Mr. Thompson, by pouring gasoline on him and setting him on fire. On June 19, 2006, Plaintiff was provided a Notice of Contemplated Action informing her of ALTS' decision to terminate her based on the threatening remarks. Although she had earlier contacted her union representative, and invoked her procedural rights on prior occasions, she did not contest the planned termination, Plaintiff resigned on June 23, 2006.

---

[2]   Although Plaintiff now disputes these charges, she offers no proof to the contrary and filed no challenge or grievance at the time.

*Discussion*

While the complaint also raises religion and race, it is clear from Plaintiff's pretrial order, she is now only maintaining "[t]hat Defendant NMALTSD/APS through its representative managers, Karen Allen and Matthew Thompson, <u>discriminated and harassed Plaintiff beginning in June, 2004 based on her Gender (female) and her Age (59 on 6/2/05)</u>." (Pretrial Ord. III-A p. 3) (emphasis in original).³ Plaintiff goes on to charge "that Defendant through Mr. Thompson <u>discriminated against and harassed Plaintiff by having CO-EMPLOYEES ACT AS INFORMANTS AGAINST PLAINTIFF AND FALSELY REPORTING TO Mr. THOMPSON DAILY. These FALSE reports were regarding Plaintiff's whereabouts, her presence in the office and her absences from the office.</u>" *Id.*

*Sexual Harassment*

In order to be legally actionable, harassment must be motivated by some factor such as age or gender which is prohibited by the law. Not everything that makes an employee unhappy qualifies as discrimination or retaliation under federal law. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 939 (10th Cir. 2005). Mere individual hostility by a supervisor toward an employee is not legally sufficient. *Riske v. King Soopers*, 366 F.3d 1085, 1091 (10th Cir. 2004). Nor is it enough that the work environment is

---

³ Since the pretrial order supercedes the pleadings and controls the issues, the Court must assume Plaintiff abandoned her race (White/Anglo) and religion (Methodist) claims. *Elephant Butte Irrig. Dist. of New Mexico v. United States Dep't of Interior*, 538 F.3d 1299, 1302 (10th Cir. 2008)

5

**generally harsh and unpleasant; in order to find a hostile work environment under the law the plaintiff must be harassed <u>because</u> she is a woman not because of her personality or work habits.** *Hurley v. Atlantic City Police Dep't*, **174 F.3d 95, 116-17 (3d Cir. 1999). Even if Federal Rule of Evidence 802(d)(2) allowed the Court to accept Plaintiff's unsubstantiated exhibits for something beyond admissions by Plaintiff,[4] these exhibits do not create material issues of fact regarding gender discrimination. For example, Plaintiff maintains:**

> **that Defendant through it managers Ms Karen Allen and Mr. Thompson harassed Plaintiff by falsely accusing her of being out of the office for non-work activities. Both Mr. Allen and Mr. Thompson falsely accused Plaintiff of being absent for sick leave more than the other employees: See EXHIBIT #15; Affidavit of Mr. Robertson/APS Supervisor.**
>
> **Defendant discriminated against and harassed Plaintiff by Ms Allen and Mr. Thompson falsely accusing Plaintiff of being rude to clients;**
>
> **Defendant, through Mr. Thompson has constantly discriminated against and harassed Plaintiff by <u>singling her out and requiring only Plaintiff to report her attendance in the work place by telephone and/or email each and every day.</u>**

**(Pretrial Ord. p. 4). She fails to support any of this through adequate evidence.[5]**

---

[4] In addition to her random medical bills and personal notes, Plaintiff submits an "affidavit" from a co-worker, Bobby Rick Robertson, which is just a typed document with no signature much less notarization or any authentication. These exhibits are legally deficient. *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006); *Barlow v. Connecticut*, 319 F. Supp. 2d 250, 259 (D. Conn. 2004), *aff'd*, 148 Fed. Appx. 31 (2d Cir. 2005).

[5] Although the Court has searched all of Plaintiff's scattered exhibits and the entire court file, no evidence other than Plaintiff's "Affidavit," which merely reasserts her claims and in several particulars, contradicts her deposition. Such allegations in an affidavit may be disregarded if they merely create a sham issue by contradicting deposition testimony. *Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir. 2003). "Unsupported conclusory allegations ... do not create an issue of fact." *Finstuen v. Crutcher*, 496 F.3d 1139, 1146 (10th Cir. 2007) (quoting *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

**Although Plaintiff's "affidavit" is replete with instances in which she claims Matthew Thompson and/or her direct supervisor, Karen Allen, treated her unfairly based on the false reports of co-workers (informants) (Aff. ¶¶ 15, 19, 24, 31, 34, 36, 45), none of these are tied directly to Plaintiff's gender. On this topic the following statements in her affidavit are Plaintiff's only "evidence":**

### FACTS REGARDING MR. THOMPSON'S MOTIVE BASED ON GENDER

56. Not just too blond, are you? Your [sic] also a real blond.

57. Mr. Thompson also often stated that "she is pretty dittsey", meaning silly I think.

58. Mr. Thompson especially took issue with having information that I was taking a medication for my allergies, Prednisone. He said his father took this medication and he became "very emotional". Mr. Thompson could not imagine what it would to do "a woman, especially an old woman" "it would/could be too much for this office".

59. The comments contained in Mr. Rick Robertson's Statement are that Mr. Thompson actually said to Mr. Robertson, "she is too emotional". "She can not change with the agency to the New View of Protective Services, she is too used to the feminine perspective".

(Aff. p. 13).

These allegations in Plaintiff's affidavit are, however, not supported by the record. They are also inconsistent with her letter of resignation which cites no gender or age discrimination but rather focuses on "irreconcilable differences":

> **Here is my letter of resignation, which is to be effective 6/24/06. I find that I can not continue to subject my self to Mr. Thompson's constantly negative, detrimental, demoralizing, oppressive, combative, judgmental and biased treatment.**
>
> **Most of all the constantly hostile treatment and hostile work environment I have experienced and continue to experience from Mr. Thompson.**
>
> **He and I share an unrelenting, intensely negative relationship. I find ours are irreconcilable differences, which prevent my continuing employment under his direction and or supervision.**

Once again, while Plaintiff attempts to use legal buzzwords like "hostile work environment," it is clear this dispute is based on a basic personality conflict and the performance perceptions of her supervisors.

A court cannot use a sex discrimination claim to assume the role of a super personnel department and second guess an employer's good faith business judgment. *Turner v. Public Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009); *Santana v. City & County of Denver*, 488 F.3d 860, 865 (10th Cir. 2007). The fact Karen Allen and Matthew Thompson may have acted on the reports of other employees, including Defendant's legal counsel who investigated the death threat, does not prove their decisions were discriminatory and irrational. The Court does not ask whether the employer's reasons "were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118-19 (10th Cir. 2007). The courts must

therefore "consider the facts as they appeared to the person making the decision, and we do not second guess the employer's decision." *Id.* at 1119. Plaintiff cannot sustain a claim that Defendant's acts were a pretext for discrimination where co-workers repeatedly reported her delinquency at work and the death threats which a Department investigation substantiated. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (death threat sufficient to overcome pretext); *cf. Green v. Burton Rubber Processing, Inc.*, 2002 U.S. App. U.S. DIST LEXIS 2959 (6th Cir. 2002) (employer did not violate FMLA by terminating employee making death threats against supervisor).

*Age Discrimination*

In her portion of the pretrial order relating to age discrimination, Plaintiff states:

*FACTS REGARDING MR. THOMPSON'S MOTIVE BASED ON AGE*

52. The real problems began as I attempted to find other Social Work employment it became evident to me that I was being BLACK LISTED. I was unemployable! At that time I made contact with Human Rights and filed a complaint against Mr. Thompson, CYFD and ALTSD. Again, my complaint fell on deaf ears. My rights and my complaint were denied. And it seems no one is surprised by this result. This is just how it is done. Only it not being done. Plaintiff has made application for more than 122 positions, after so many interviews, and four times was hired only to have each position offered fade away with some sort of excuse. ANYONE would believe Plaintiff to be BLACKLISTED OR BLACKBALLED! EXHIBIT 15a

    MR THOMPSON ALSO INSTRUCTED OTHER MANAGERS IF SOMEONE SHOULD CALL OR A REFERENCE FOR THIS

>   **PLAINTIFF, THE [sic] ARE TO SEND THE CALL TO HIM ONLY.  EXHIBIT 15**
>
>   > **Mr. Thompson has taken my education**
>   > **My livelihood;**
>   > **My professional respect;**
>   > **My ability to earn a living and**
>   > **My future security!  There is no way this treatment/outcome is right.**
>
> 53. **Mr. Thompson, by his own admission has informants in Quay Co., in my work place who have absolutely NOT reported truthfully to him about this Plaintiff.  EXHIBIT'S 13 AND 14**
>
> 54. **Mr. Thompson has also admitted to having told the Quay office Staff <u>prior to my interviewing with them for the aps position</u> that he felt "she/Plaintiff is too old and can not change with the new technologies" "She/Plaintiff is too old to charge with the agency changes over time", "She/Plaintiff is too old to keep up with the work load"; and he said, "I told them', meaning Quay Co., not to hire her/Plaintiff.**
>
> 55. **And Mr. Robertson also stated that he was told by Ms Allen that Mr Thompson would not allow Plaintiff use of any sort of flex time because "he wants to get rid of her/Plaintiff, because she is too old to keep up with the work load, and she/Plaintiff can't adapt to the technological age", that Plaintiff "was just too old and in poor health to perform the duties assigned to her".  It seems Mr. Thompson did not disclose to this Supervisor that his informants would soon see to it that "she", Plaintiff was gone.  EXHIBIT 15**

**If substantiated, *i.e.* supported by an adequate record, paragraphs 54 and 55 could be construed to support an inference of age discrimination.  (Ignoring the intervening reports of death threats by the Plaintiff.)  As noted earlier, however, Exhibit 15 is a purported "affidavit" by Bobby Rick Robertson which lacks any of the**

10

legally requisite indicia of reliability.  *Elder-Keep v. Aksamit*, 460 F.3d at 984; *Barlow v. Connecticut*, 319 F. Supp. 2d at 259.

Exhibit 13 is Plaintiff's Employee Development Appraisals by Karen Allen.  It contains an initial job performance review of June 22, 2005, an interim review of December 29, 2005, and a final review of May 11, 2006.  The first two resulted in "satisfactory" assessments while the final review was "not acceptable."  Exhibit 13A contains what appears to be emails to and from Matthew Thompson discussing the necessity of a "corrective action plan" for Plaintiff.  Exhibit 14 is a handwritten sheet entitled "My Notes" and Exhibit 15 is, once again, the unsigned, unsworn "affidavit" of Bobby Rick Robertson.  This "evidence" is insufficient to find a question of material fact.  *Elder-Keep, supra; Barlow, supra*.

_____
**BRUCE D. BLACK**
**United States District Judge**